## El Pueblo *v.* Ortiz Et Al.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 24.—Resuelto en Diciembre 4, 1903.

Veredicto—Sentencias.—El veredicto formulado por el Jurado es la base fundamental de las sentencias dictadas en causas criminales, y no la declaratoria de hechos probados que consignen los Jueces en su sentencia

Id.—Pliego de Excepciones.—El veredicto se considera como el resultado de las pruebas practicadas en el juicio, y la parte que impugne la apreciación de esas pruebas, debe presentar el correspondiente pliego de excepciones, formado con arreglo á derecho, para justificar que el veredicto es contrario á tales pruebas.

Acusados como Testigos de Cargo.—El Tribunal puede excluir del juicio á cualquiera de los acusados, á petición del Fiscal, y antes de que los acusados hubieren comenzado su defensa.

Celebración del Juicio.—Un Tribunal que denegando la suspensión del juicio, solicitada por el abogado del acusado, por no poder asistir al acto, provee á dicho acusado de otro abogado defensor y procede á la celebración del juicio, bajo su dirección y defensa, no comete error, ni puede ser impugnada su resolución por motivos de indefensión.

Traslado de Causas.—La solicitud en que se interese el traslado de la causa á otro Tribunal deberá estar debidamente jurada y la circunstancia de que un jurado no ha podido ponerse de acuerdo para dictar veredicto, no es motivo suficiente para solicitar el traslado de la causa, fundándola en que, por tal razón, no es posible obtener un juicio justo é imparcial.

No. 24.—Decided December 4, 1903.

VERDICT—SENTENCE.—A judgment is based upon the verdict of the jury and not upon the findings of facts made by the judge.

ID.—SUFFICIENCY OF THE EVIDENCE TO SUPPORT A VERDICT—BILL OF EXCEPTIONS.—The appellate court will not consider the sufficiency of the evidence to support a verdict unless the same is set forth in a bill of exceptions as prescribed by law.

ID.—CO-DEFENDANT AS A WITNESS FOR THE PROSECUTION.—The court may on motion of the *Fiscal*, at any time before the accused have gone into their defense, direct any defendant to be discharged that he may be a witness for the prosecution.

ID.—SPEEDY TRIAL.—Where an interval of one hundred and fifty-one days has elapsed between the filing of the information and the conviction, and a mistrial has occurred in the meantime, the defendant cannot insist that he has been denied the benefit of a speedy and impartial trial.

ID.—MOTION FOR CONTINUANCE—ABSENCE OF COUNSEL. — No error is committed by the trial court in overruling a motion for a continuance upon the ground of the absence of counsel, when it is shown that defendant was duly provided with counsel upon the trial and that his case was properly submitted to the jury.

ID.—CHANGE OF VENUE.—A motion for a change of venue must be sworn to by the defendant, and the fact that a former jury failed to agree upon the verdict is not sufficient ground for the granting of a change of venue.

Los hechos están expresados en la opinión.

Abogado del apelante : *Sr. Ramos ( Juan R.)*

Abogado del apelado : *Sr. del Toro,* Fiscal.

EL JUEZ ASOCIADO SR. HERNÁNDEZ, emitió la siguiente opinión del Tribunal.

El caso sometido á la decisión de esta Corte Suprema es un recurso de apelación interpuesto por José Ortiz Llauger, Rodolfo Lara, Natalio Yañez y Rafael Gutierrez (a) Quirico, contra sentencia del Tribunal de Distrito de Mayagüez en juicio por jurado condenando á cada uno de ellos á la pena de diez años de presidio con trabajos forzados que extinguirán en el Departamental de esta Isla, y al pago de las costas procesales por cuartas partes. Los apelantes, en unión de Virgilio López Agostini, fueron acusados en 26 de Noviembre del año próximo pasado por el Fiscal del Distrito de Mayagüez del delito de asesinato en primer grado, cometido como sigue :

"Los expresados José Ortiz, Rafael A. Gutierrez (a) Quirico, Rodolfo Lara, Natalio Yañez y Virgilio López Agostini, en las primeras horas de la noche del día 7 de Noviembre del año de Nuestro Señor 1902, en el distrito antes mencionado, y en esa parte del distrito conocido y designado como término municipal de Mayagüez, por medio de la violencia y de las armas, á sabiendas, intencional y deliberadamente, con malicia y premeditación, mataron á un tal Juan Cardona Quiles, en ó cerca de la carretera que desde la ciudad de Mayagüez, Puerto Rico, conduce al pueblo de Añasco, y que los expresados José Ortiz, Rafael A. Gutierrez (a) Quirico, Rodolfo Lara, Natalio Yañez y Virgilio López Agostini en la forma y'manera antes citada, intencionalmente, y con deliberada y premeditada malicia, mataron y asesinaron al expresado Juan Cardona Quiles, y fueron causa de tal muerte y asesinato, contrario á la forma, eficacia y propósito de la ley para tal caso hecha y prevista y contra la paz y dignidad del Pueblo de Puerto Rico."

En el mismo día expresado se dió lectura de la acusación á los acusados, quienes se declararon "no culpables", y á los dos días su letrado defensor, el abogado Don Pascasio Fajardo, alegó contra ella la excepción perentoria comprendida en el número 1 del artículo 153 del Código de Enjuiciamiento Criminal, por no precisar con la debida claridad en

The facts are stated in the opinion.

*Mr. Juan R. Ramos,* for appellant.

*Mr. del Toro, Fiscal,* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the following opinion of the court:

The case submitted to the decision of this Supreme Court is an appeal taken by José Ortiz Llauger, Rodolfo Lara, Natalio Yañez, and Rafael Gutierrez, *alias* "Quírico," from the judgment rendered by the District Court of Mayagüez, in a trial by jury, sentencing each of them to ten years of imprisonment in the penitentiary at hard labor, said sentence to be served in the departmental penitentiary of this Island, and each to pay one-fourth the costs of the proceedings. The appellants, together with Virgilio López Agostini, were charged, on the 26th of November, 1902, by the *Fiscal* of the District of Mayagüez, with the crime of murder in the first degree, committed as follows:

"The aforesaid José Ortiz, Rafael A. Gutierrez, *alias* 'Quírico,' Rodolfo Lara, Natalio Yañez and Virgilio López Agostini, during the early hours of the night of the 7th of November, A. D. 1902, in the aforementioned district, and in that part of the district known and designated as the municipal district of Mayagüez, by means of violence and with the use of weapons, did knowingly, intentionally and deliberately, with malice aforethought, kill one Juan Cardona Quiles, on or near the highway leading from the city of Mayagüez, Porto Rico, to the town of Añasco; and the aforesaid José Ortiz, Rafael A. Gutierrez, *alias* 'Quírico,' Rodolfo Lara, Natalio Yañez and Virgilio López Agostini, did, in the manner above stated, intentionally and with deliberate and premeditated malice, kill and murder the aforesaid Juan Cardona Quiles, and were the cause of such death and murder, contrary to the form, force and effect of the law in such case made and provided, and against the peace and dignity of the People of Porto Rico."

On the same day the defendants were arraigned and pleaded not guilty, and two days thereafter, their counsel, Attorney Pascasio Fajardo, demurred to the information as coming under paragraph 1 of section 153 of the Code of Criminal Procedure, inasmuch as the acts constituting the offense were not stated with due clearness, which demurrer

la exposición los hechos constitutivos del delito, cuya excepción fué desestimada por el Tribunal de Mayagüez. Después de haberse visto la causa por un Jurado que no pudo ponerse de acuerdo para dar su veredicto, el Letrado Don Herbert E. Smith, á nombre de Virgilio López Agostini, pidió con fecha 12 de Enero último, que su defendido fuera juzgado con separación de los demás acusados, cuya petición fué denegada, por no haber aquél ejercitado su derecho en tiempo oportuno. En 15 de Abril el Letrado Don Juan R. Ramos, defensor de los acusados Ortiz y Lara, solicitó la traslación de la causa á otro Distrito, fundándose en que un juicio justo é imparcial era imposible obtenerlo en el de Mayagüez, toda vez que allí se había celebrado ya el juicio por Jurados sin poderse llegar á un resultado final, y todas las personas conocían los hechos y las pruebas, y tendrían formados sus prejuicios, á cuya solicitud se dictó resolución de no haber lugar á proveer, por no estar jurado el escrito presentado; y habiéndose señalado el día 27 del citado Abril para la celebración del segundo juicio, el mismo Letrado Ramos, en la representación expresada, interesó se dejara sin efecto el señalamiento hecho, fijando otro día posterior al de 5 de Mayo siguiente, en atención á que para los días 27 y 29 de Abril y 5 de Mayo tenía señaladas vistas en apelaciones de causas criminales, dos de ellas graves, ante esta Corte Suprema, siéndole por tanto imposible concurrir á Mayagüez en el día 27 de Abril; habiendo recaido providencia de no haber lugar á lo solicitado, y ordenando á los acusados Ortiz y Lara nombraran otro abogado que los representara y defendiera, apercibidos con serles nombrado de oficio. Constituído el Jurado, estando representados y defendidos José Ortiz Llauger por el Letrado Don Enrique Lloreda Casabó, Rodolfo Lara por el Letrado Don Victor Primo Martinez, Natalio Yañez por el abogado Don José Ramón Freyre, Rafael A. Gutiérrez por el Letrado Don Herbert E. Smith y Virgilio López Agostini por el Letrado Don Salvador Mestre Caparrós, se procedió á la celebración

was overruled by the Mayagüez court. After the case had been heard by a jury, who failed to agree upon a verdict, Herbert E. Smith, Esq., on behalf of Virgilio López Agostini, requested, under date of January 12, 1903, that his client be tried separately from the other defendants, which request was denied because he had not availed himself of this right in due time. On April 15 Juan R. Ramos, counsel for the defendants, Ortiz and Lara, made a motion for a change of venue to another district, on the ground that a fair and impartial trial could not be had in the Mayagüez court, inasmuch as a jury trial had been held there without reaching a final result, and everybody knew the facts and the evidence and was probably prejudiced, which motion was denied because the same had not been sworn to. The 27th of the said month of April having been set for the second trial, said Attorney Ramos, on behalf of the same defendants' prayed that the appointment of said date be left without effect, and a day subsequent to the 5th of May following be set, in consideration of the fact that on April 27 and 29, and May 5, he had criminal cases on appeal in this Supreme Court, two of which were of a serious character, it being thus impossible for him to be in Mayagüez on April 27. An order issued denying said request and directing that the defendants appoint another lawyer to represent and defend them, they being advised that if they failed to do so, the appointment would be made by the court. The jury was impaneled, and José Ortiz Llauger being represented by Enrique Lloreda Casabó, Rodolfo Lara by Victor Prime Martínez, Natalio Yañez by José Ramón Freyre, Rafael A. Gutierrez by Herbert E. Smith, and Virgilio López Agostini by Salvador Mestre Caparrós, the trial was proceeded with. The evidence offered by the *Fiscal* was taken, and before beginning with the evidence of the defense, he requested that the information against Virgilio López Agostini be dismissed in order that he might become a witness for the People, said defendant being accordingly discharged by the

del juicio, practicándose las pruebas propuestas por el Fiscal,
quien antes de que comenzaran las de la defensa solicitó
fuera excluído de la acusación Virgilio López Agostini, para
hacerlo testigo del Pueblo de Puerto Rico, quedando ex-
cluído y absuelto libremente por orden del Tribunal.    Ter-
minadas las pruebas, el Jurado pronunció veredicto encon-
trando á los acusados culpables de homicidio voluntario, y
en su consecuencia el Juez de derecho pronunció sentencia
que copiada literalmente dice así :

"Sentencia:    En esta causa por delito de asesinato en primer grado,
basada en una acusación jurada y presentada ante esta Honorable Corte por
el Sr. Fiscal del Distrito, y vista en juicio por Jurado, resultaron probados
los hechos siguientes:    1º — Que en la tarde del día 6 de Noviembre del
pasado año 1902, llegaron á esta ciudad procedentes de San Sebastián, los
individuos Juan Cardona Quiles y José Padró Quiles, con objeto de declarar
ante el Sr. Fiscal de este Distrito en una causa que se seguía contra el
entonces cabo de la Policía Insular José Ortiz Llauger (uno de los acusados
en esta causa), y destacado en aquella época en dicho pueblo de San Sebas-
tián.    2º — Que al siguiente día, ó sea el 7 del propio mes de Noviembre, y
cumpliendo con la citación hecha por el Sr. Fiscal, comparecieron ante este
funcionario y prestaron sus declaraciones los expresados Cardona Quiles y
Padró Quiles.    3º — Que cuando salían del local de esta Corte, fueron
registrados por el entonces cabo de la Policía Municipal de esta ciudad,
Rodolfo Lara (otro de los acusados) quien pretextando haber hallado una
navaja en la persona de Quiles Cardona le detuvo y condujo al Cuartelillo
de Policía.    4º — Que la tarde de dicho día 7 de Noviembre y después de
haber sido puesto en libertad Cardona Quiles, se dirijió en unión de Padró
Quiles á una fonda de esta ciudad, donde comieron, y temerosos de que
continuara la persecución de que eran objeto, por haber el Cardona Quiles
declarado en contra del acusado José Ortiz, decidieron abandonar esa misma
noche esta ciudad, con el propósito de ir á dormir esa noche á Añasco, en
cuyo pueblo se creían al abrigo de todo nuevo atropello.    5º — Que poniendo
en práctica su determinación, se dirijieron hacia Añasco en sus caballos á la
caida de la tarde y ya entrada la noche.    6º — Puestos de acuerdo todos los
acusados resolvieron salir en persecución de los dos individuos citados y al
efecto Virgilio López Agostini, Rafael Gutierrez (a) Quirico, y José Ortiz
Llauger, ocuparon un coche de línea que conducía Federico Cintrón (a)
Don Quico, habiéndose dirijido dos veces hacia el puente de Balboa de esta
ciudad, y ordenando luego al cochero que se dirigiera por la carretera de
Añasco.    Los otros dos acusados Natalio Yañez y Rodolfo Lara también

court. After all the evidence was heard, the jury returned a verdict finding the defendants guilty of voluntary manslaughter, whereupon the court pronounced sentence, which, literally transcribed, reads as follows:

"Sentence.—In this cause for the crime of murder in the first degree, based upon a sworn information filed in this court by the *Fiscal* of the district and tried by a jury, the following facts were proven: 1. That on the evening of November 6, 1902, the individuals, Juan Cardona Quiles and José Padró Quiles, arrived in this city from San Sebastián, for the purpose of testifying before the *Fiscal* of this district in a case prosecuted against José Ortiz Llauger, one of the defendants herein, at that time a corporal of the Insular Police, stationed in said town of San Sebastián. 2. That on the following day, November 7, in response to the summons of the *Fiscal*, said Cardona Quiles and Padró Quiles appeared before that official and gave their testimony. 3. That when leaving the court they were searched by Rodolfo Lara, another of the defendants, at that time a corporal of the municipal police, who under the pretext of having found a razor on his person, arrested Quiles Cardona and took him to the police station. 4. That on the evening of said November 7, Cardona Quiles having been discharged, he and Padró Quiles went to an eating-house, where they took some food, and fearing that the persecution of which they were the object might continue, because of the testimony Cardona Quiles gave against the defendant, José Ortiz, they decided to leave this city that very night, so as to sleep in Añasco, where they thought they would be secure from further molestation. 5. That acting upon this determination, they at the close of the evening, when night was approaching, set out for Añasco on their horses. 6. That the defendants, after coming to an understanding, decided to start in pursuit of both the aforesaid individuals, and for that purpose Virgilio López Agostini, Rafael Gutierrez, *alias* 'Quirico,' and José Ortiz Llauger, took a coach driven by Federico Cintrón, *alias* 'Don Quico,' and after driving twice in the direction of the Balboa bridge of this city, ordered the coachman to proceed to the Añasco highway. The other two defendants, Natalio Yañez and Rodolfo Lara, took another coach, driven by Américo Benítez, and after going through some of the streets of this city, ordered the coachman to drive them in the direction of Añasco. 7. In front of the first road laborer's house on the outskirts of this city on the Añasco highway, the coach driven by Américo Benítez overtook and passed the one driven by Federico Cintrón, *alias* 'Don Quico,' and close by a culvert on said road they saw Juan Cardona Quiles and José Padró Quiles, who were quietly and peacefully traveling on horses towards Añasco. 8. Both coaches passed by them, and when near the bridge over the brook known as 'Quebrada de Oro,' crossing said

ocuparon otro coche de línea, conducido por Américo Benitez, y después de pasar por algunas calles de esta ciudad, dieron orden al cochero de que les llevara hacia Añasco.    7º — Frente á la primera casilla de los peones camineros, situada al salir de esta ciudad, y en la carretera que conduce á Añasco, el coche que conducía Américo Benitez pasó junto al conducido por Federico Cintrón (a) Don Quico, dejándole detrás, y cerca de una alcantarilla de dicho camino, divisaron á los individuos Juan Cardona Quiles y José Padró Quiles, quienes tranquila y pacíficamente, se dirijían en sus caballos hacia Añasco.   8º — Que ambos coches pasaron de largo á dichos individuos, y ya junto al puente de la denominada quebrada de Oro, la cual cruza dicho camino de Añasco, los pasajeros que iban en el coche de Américo Benitez ordenaron á éste que diese la vuelta haciendo lo propio el otro cochero, por indicación de las personas que iban en su coche.   9º — Vueltos ya ambos coches en dirección hacia esta ciudad, á poca distancia uno del otro, y á unos cincuenta metros mas ó menos de la referida quebrada de Oro, hallaron á lon jinetes citados y saltando los pasajeros de ambos coches les atacaron, trabándose entre ellos una lucha, en la cual el acusado Rafael Gutierrez (a) Quirico recibió tres heridas causadas con instrumento punzante, una de ellas en la muñeca, otra en la fosa iliaca y otra en la pantorrilla, en cuya lucha se disparó un tiro de revólver, cuyo proyectil atravesó el corazón á Juan Cardona Quiles, produciéndole la muerte instantánea; sin que se haya justificado cual de los acusados fuera el autor del disparo. El Sr. Fiscal, haciendo uso de la facultad que le concede el artículo 239 del Enjuiciamiento Criminal, y prévia la aprobación del Sr. Presidente de dicho juicio, excluyó de la acusación, con objeto de utilizarlo como testigo de cargo, contra los demás acusados, al procesado Virgilio López Agostini, quedando éste por ese hecho, absuelto libremente, sin que pueda procesársele nuevamente por este mismo delito, de conformidad con lo que previene el artículo 241 del referido cuerpo legal. El Jurado después de deliberar, pronunció contra los otros cuatro acusados un veredicto encontrándoles culpables de homicidio voluntario, y en su consecuencia el Hon. Sr. Juez Presidente de dicho juicio, teniendo en cuenta los artículos 203, inciso 1º y 204 del Código Penal, y las circunstancias agravantes que han concurrido en la comisión del delito, condena á los acusados José Ortiz Llauger, Rodolfo Lara, Natalio Yañez y Rafael Gutierrez (a) Quirico á la pena de diez años de presidio con trabajos forzados que extinguirán en el Departamental de esta Isla, y al pago de las costas procesales por cuartas partes.—Mayagüez 1º de Mayo de 1903.— J. A. Erwin."

Contra esa sentencia los Letrados defensores de José Ortiz Llauger y Rodolfo Lara interpusieron recurso de apelación alegando como motivos los siguientes:

Añasco road, the passengers in Américo Benítez's coach ordered him to turn back, which the other coachman also did at the request of those who were in his coach. 9. Both coaches having now turned back in the direction of this city, one being at a short distance from the other, at about 50 meters, more or less, from aforesaid 'Quebrada de Oro,' they met said horsemen, when the passengers jumped from both coaches and attacked them, a fight following between them in which the defendant Rafael Gutierrez, 'Quirico,' received three wounds caused by a pointed weapon, one in his wrist, another in the iliac region and another in the calf of his leg, and in the affray a revolver was fired the bullet of which pierced the heart of Juan Cardona Quiles, who was instantly killed, and it has been impossible to determine which of the defendants fired the shot. The *Fiscal*, availing himself of the power conferred upon him by section 239 of the Code of Criminal Procedure, and with the approval of the presiding judge, dismissed the information against the defendant Virgilio López Agostini in order that he might become a witness for the prosecution, whereupon he was discharged, and therefore could not again be prosecuted for the same offense, as provided by section 241 of aforesaid Code. The jury after deliberating returned a verdict finding the other four defendants guilty of voluntary manslaughter, and accordingly the presiding judge, in view of section 203, paragraph 1, and section 204, of the Penal Code, and the aggravating circumstances surrounding the commission of the crime, sentenced the defendants José Ortiz Llauger, Rodolfo Lara, Natalio Yañez, and Rafael Gutierrez, *alias* 'Quirico,' to ten years of imprisonment in the penitentiary at hard labor, said sentence to be served in the departmental prison of this Island and each to pay one-fourth of the costs of the proceedings. Mayagüez May 1, 1902.—J. A. Erwin."

Fron this sentence the counsel for José Ortiz Llauger and Rodolfo Lara took an appeal, based upon the following grounds, to wit:

1. That defendants were without means of defense, because counsel having been appointed·for them at the trial, they were unable to prepare and introduce their evidence on account of the lack of time for the summoning of witnesses. 2. Refusal to allow a change of venue to another court, it being impossible to obtain an impartial verdict in Mayagüez, as the facts were known there. 3. Refusal to continue the trial in view of the fact that it was impossible for the counsel chosen by said defendants to be present at the trial.

The defendants Yañez and Gutiérrez also took an appeal through their respective counsel, without making any alle-

1º — Indefensión de los mismos, porque habiéndoseles nombrado abogados en el acto del juicio, no pudieron formular sus pliegos de prueba, en atención á carecer de tiempo para la citación de testigos.  2º — No haberse admitido la traslación de la causa á otro Tribunal, siendo imposible obtener en el de Mayagüez un veredicto imparcial, por el conocimiento que se tenía del hecho. 3º — No haberse transferido la celebración del juicio atendida la imposibi-. lidad de asistir el abogado que habían designado dichos reos.

También los acusados Yañez · y Gutierrez interpusieron recurso de apelación por medio de sus respectivos Letrados, sin que hicieran alegación alguna en impugnación de la sentencia pronunciada.  Los recursos de apelación fueron admitidos y elevadas en su consecuencia á esta Corte Suprema las correspondientes copias certificadas del acta del juicio, en cuya acta se consignan todos los hechos que se dejan expuestos, siendo de notar que no consta el detalle ó expresión del resultado de cada una de las pruebas practicadas, y que tampoco ha venido pliego alguno de excepciones.  Habiéndose dado á los recursos la tramitación correspondiente, el Letrado Don Juan R. Ramos ante esta Corte Suprema, en representación de todos los apelantes, formalizó dichos recursos impugnando los hechos declarados probados por el Juez de derecho en su sentencia, y alegando como infracciones de la ley las siguientes:

1ª — La del artículo 7 del Código de Enjuiciamiento Criminal, toda vez que el Fiscal había hecho declarar al cochero Federico Cintrón Benitez y á Virgilio López Agostini contra ellos mismos y los demás acusados, bajo la. amenaza de insistir en la acusación y bajo la promesa de excluirles de ella en el caso de que accedieran á su proposición; habiéndose infringido también el artículo 239 por haber sido excluído de la acusación López Agostini cuando ya los acusados habían entrado en el período de su defensa.  2ª — El artículo 11 del mismo Código, toda vez que los acusados no tuvieron un juicio rápido ni fueron defendidos por los abogados que habían elegido, ni se les dió tiempo para presentar los testigos de descargo.  3ª — El artículo 171 en su apartado primero pues se negó á los reos la traslación de la causa á otro Tribunal, no obstante haberse solicitado en escrito autorizado por el Letrado que los representa y firmado por los mismos acusados, que prometieron jurar la petición ante el Tribunal, quien debió hacerlos comparecer desde luego para ese objeto.  4ª — El artículo 203 del Código Penal, al calificarse de homicidio voluntario el delito procesal, pues se condena, prévia

gation in opposition to the sentence rendered. The appeals were allowed and the proper certified copies of the record ·of the trial, containing a statement of the facts herein set forth, were sent up to this Supreme Court, and it is to be noted that a statement or ·specification of the evidence introduced in each case does not appear in said record, nor is there any bill of exceptions. The proper procedure having been followed in these appeals, Juan R. Ramos, Esq., ·on behalf of all the appellants, perfected said appeals before this Supreme Court, attacking the findings of fact made by the court, and alleging the following violations of law:

· 1. Violation of section 7 of the Code of Criminal Procedure, inasmuch .as the *Fiscal* had compelled the coachman, Federico Cintrón Benítez, and Virgilio López Agostini to testify against themselves and against the other defendants, under threat of prosecution .and promising to exclude them from the information if they acceded to his proposition; section 239 being also ·violated, because the information against López Agostini was dismissed after the defendants had already entered upon their defense. 2. Section 11 of the same Code, because the defendants did not have a speedy trial, nor had they been defended by the counsel of their own choice, nor been allowed time to produce witnesses in their behalf. 3. Section 171, first paragraph, because the motion of the defendants for a change of venue to another court was denied notwithstanding the same had been made in writing and signed by the attorney representing them and by the defendants themselves, who promised to swear to the petition before the court which should have summoned them forthwith to appear for that purpose. 4. Section 203 of the Penal Code, in classifying as voluntary manslaughter the crime for which defendants were prosecuted, because after a verdict of guilty by the jury, judgment of conviction is rendered against five men, who, as stated in said judgment, entered into a plot for the purpose of committing a crime, chose the nighttime, and started in pursuit of the victim, waylaid him, the fight taking place resulting in his death, while it is not known which of them is responsible for the killing, because it is not known who was the one who fired the shot, all of which circunstances might warrant the classification of the crime as murder in any of the degrees thereof, were it not also declared in the judgment that Rafael Gutiérrez had been wounded with a pointed weapon which must have happened before Cardona Quiles received the shot that ·caused his death; whence it is to be inferred that there was defense, which .brought about a mere homicide which could not have been committed by all

declaración de culpabilidad por el Jurado, á cinco hombres, quienes, según se declara probado en la sentencia, se concertaron para cometer el crimen, escogieron la noche y se fueron en persecución del interfecto, saliéndole al encuentro y trabando una lucha con él, de la que resultó su muerte, sin que se sepa cual de ellos fué el autor de la misma, por ignorarse quien hizo el disparo, cuyas circunstancias todas podrían dar lugar á la calificación del delito de asesinato en cualquiera de sus grados, si en la sentencia también no se declarara probado que Rafael Gutierrez quedó herido con instrumento punzante, lo que hubo de ocurrir antes de recibir Cardona Quiles el disparo que le produjo la muerte; de lo cual se desprende que hubo defensa, lo que originó un homicidio simple, que no pudo ser efectuado por todos los acusados, siendo indudable que si el herido Gutierrez fué el matador obró en defensa propia, y si la muerte fué obra de cualquier otro de los acusados, es claro que existe una atenuante muy calificada de haber obrado en defensa de su compañero, caso de que no se estime que también obró en defensa propia, toda vez que fuera de combate Gutierrez, se viera también atacado por Cardona Quiles el que disparó el revólver contra éste.

El Fiscal impugnó el recurso y solicitó se declara sin lugar con las costas á los recurrentes. Examinados los motivos de apelación alegados, desde luego es improcedente la impugnación de los hechos que el Juez sentenciador estimó probados, pues el veredicto de culpabilidad pronunciado por el Jurado es la base fundamental del fallo y no la declaratoria de hechos probados que haga el Juez de derecho, hasta el punto de que dicho Juez no tiene necesidad de consignar como fundamento de su fallo más que el veredicto del Jurado. Ese veredicto debe reputarse como el resultado de las pruebas practicadas en el juicio, y al Letrado de los acusados, toca en el caso de que impugne la apreciación de esas pruebas, presentar el correspondiente pliego de excepciones en los términos que la ley previene, para justificar que el veredicto es contrario á tales pruebas. Desconociendo como desconoce esta Corte Suprema el detalle de las pruebas practicadas en el juicio, pues no se ha presentado pliego alguno de excepciones, no puede apreciar si entre ellas y la sentencia pronunciada, como consecuencia del veredicto del Jurado, existe contradicción. Tampoco se han infringido los artículos 7 y 239 del Código de Enjuiciamiento Criminal, pues en el testimonio del acta del juicio que se tiene á la vista no consta que Federico Cintrón Benitez y Virgilio López Agostini hayan sido obligados á declarar en contra

the defendants, and there can be no doubt that if the wounded man, Gutié-rrez, was the one who did the killing, he acted in self-defense, and if the kill-ing was the work of any of the other defendants, it is clear that there exists the well defined extenuating circumstance of his having acted in defense of his companion, in case he should not be considered to have acted also in self-defense, for Gutiérrez being disabled, the one who fired the shot upon Cardo-na Quiles may have been attacked by the latter.

The *Fiscal* contested the appeal and requested that it be dismissed, with costs against the appellants. Upon an examination of the grounds alleged for the appeal, it is apparent that there is no good reason for attacking the findings of fact made by the trial judge, inasmuch as the judgment is based upon the verdict of the jury, and not upon the findings of fact made by the judge, so much so, that said judge need not depend for his judgment upon anything beyond the verdict of the jury. That the verdict must be considered as the result of the evidence taken at the trial, and it is incumbent upon counsel for the defendants, in case he wishes to attack the conclusions drawn from a consideration of the evidence, to file the proper bill of exceptions in the manner prescribed by law in order to show that the verdict is contrary to the evidence. This Supreme Court being unacquainted with the details of the evidence taken at the trial, since no bill of exceptions has been presented, is not in a position to determine whether any contradiction exists between the evidence and the judgment rendered by reason of the verdict of the jury. Nor has there been any violation of sections 7 and 239 of the Code of Criminal Procedure, because in the certified copy of the record of the trial now before us, it does not appear that Federico Cintrón Benítez and Virgilio López Agostini were compelled to testify against themselves; and as to López Agostini, it appears that in order that he might be a witness for the People on motion of the *Fiscal* the information was dismissed, not improperly in point of time, as alleged, but in due time, that is to say, before the defendants had entered upon their defense.

suya; y respecto de López Agostini aparece que para que declarara como testigo del Poder público, fué excluído del juicio á petición del Fiscal, no extemporáneamente como se afirma, sino en tiempo oportuno, ó sea antes de que los acusados hubieran empezado su defensa.

Ni pueden quejarse los recurrentes de que no hayan tenido un juicio rápido y público y de que se les hubiera coartado el derecho de defensa, con infracción del artículo 11 del Código de Enjuiciamiento Criminal, pues habiéndose cometido el delito en 7 de Noviembre del año próximo pasado, en 26 del mismo mes fué presentada la acusación, y si el juicio por Jurados tuvo lugar en 27 de Abril último, fué porque ya anteriormente habían sido juzgados por Jurados que no pudieron ponerse de acuerdo en el veredicto que habían de pronunciar, sin que haya en autos la más ligera indicación de que se les coartaran los medios de defensa, pues aunque el abogado defensor de Ortiz Llauger y Rodolfo Lara solicitó la suspensión del juicio por tener que asistir en esta Capital á la vista de otras causas, el Tribunal desestimó tal pretensión, y estando provistos de Letrados Ortiz y Lara tuvo lugar el juicio bajo la dirección y defensa de los mismos, á los que no consta se les negara prueba alguna que propusieran, por cuya razón ni ellos ni los demás acusados pueden alegar indefensión. Con razón fué negada á los acusados Ortiz y Lara la traslación de la causa á otro Tribunal, pues aparte de que el escrito en que se hacía tal solicitud no había sido jurado en la forma correspondiente, los motivos en que se fundaba tal petición no eran suficientemente poderosos para que se acordara la medida solicitada. Así lo apreció el Tribunal y si hubieran de admitirse los motivos alegados para la traslación pedida, todas las causas en que se celebra nuevo juicio por Jurado debían trasladarse á Distrito distinto de aquél en que se celebró el primer juicio. En cuanto á la infracción del artículo 203 del Código Penal, en el concepto en que se explica tal infracción, por deber estimarse como circunstancia atenuante ó eximente de responsabilidad criminal la de haber obrado Gutierrez en defensa propia y los demás en defensa de Gutierrez, si no propia, el acta del juicio, atendidos los términos

The appellants cannot complain that they have not had a speedy and public trial or that they have been deprived of their right of defense, in violation of section 11 of the Code of Criminal Procedure; for the crime having been committed on November 7 of last year, the information was presented on the 26th of the same month, and if the trial by jury took place on the 27th of April last this was because they had previously been tried by a jury which could not agree upon a verdict; nor is there the slightest indication in the record that they were deprived of any means of defense, for although counsel for Ortiz Llauger and Rodolfo Lara had requested a continuance of the trial because he had to attend to other causes in this city, the court denied said request, and Ortiz and Lara having been provided with counsel, the trial was proceeded with under their direction and it does not appear that any evidence offered by them was refused, for which reason neither these nor the other defendants can allege that they have been deprived of the means of defense. The motion of defendants Ortiz and Lara for a change of venue to another court was properly overruled, for aside from the fact that the motion had not been properly sworn to, the grounds upon which the same was based were not sufficient to warrant the granting thereof. So it was understood by the court, and if the reasons urged for the change of venue requested were to be accepted, all causes wherein a new trial by jury is had would have to be removed to a different district from the one in which it was first tried. As to the violation of section 203 of the Penal Code, in the sense said violation is explained, namely, because the fact that Gutiérrez had acted in self-defense, and the others in defense of Gutiérrez, if not in their own, should have been considered an extenuating circumstance, or one exempting them from criminal responsibility, the record of the trial, as it appears from the terms in which the same has been drawn, does not show any ground justifying the allegations made, nor has any

en que aparece redactada, no ofrece fundamento alguno que justifique las alegaciones hechas, y tampoco ha sido presentado para comprobarlas el pliego de excepciones que la ley tiene establecido al efecto.

En vista de las razones expuestas, son de desestimarse todos los motivos del recurso; y como examinados detenidamente los autos, no se encuentra infracción alguna de ley, es de confirmarse y hacerse culplir la sentencia que dictó la Corte de Mayagüez en 1? de Mayo último.

*Confirmada.*

Jueces concurrentes: Sres. Presidente, Quiñones, y Asociados Sulzbacher y MacLeary.

El Juez Asociado Sr. Figueras no formó Tribunal en la vista de este caso.